**LEXINGTON–FAYETTE URBAN COUNTY GOVERNMENT, Plaintiff–Appellant,**

v.

**BELLSOUTH TELECOMMUNICATIONS, INC., Defendant–Appellee.**

No. 00–5408.

United States Court of Appeals, Sixth Circuit.

July 26, 2001.

Before KRUPANSKY, BOGGS and BATCHELDER, Circuit Judges.

Alice M. Batchelder, Circuit Judge.

This case arises out of the County government's effort to require BellSouth, prior to placing its facilities in County rights-of-way, to obtain a franchise and pay franchise fees to the local government. The district court granted Defendant–Appellee BellSouth's motion for a preliminary injunction preventing the County from enforcing the franchise requirement. We affirm the order of the district court.

## I.

Appellant Lexington–Fayette Urban County Government (hereinafter, "the County"), filed this action in state court in January of 2000, seeking a declaratory judgment that it possesses the "right to exclude" BellSouth from using or installing facilities in public rightsofway unless BellSouth has obtained a franchise from the County. BellSouth removed the case to federal court on the basis of diversity. On February 22, 2000, BellSouth filed a motion for a preliminary injunction, asking the court to enjoin the County from requiring BellSouth to obtain the franchises. After a hearing on the motion, in which the parties stipulated the facts and agreed that the court would decide the motion as a matter of law, the court granted BellSouth's motion and issued the injunction. The County has filed a timely appeal.

Appellee BellSouth is a telecommunications provider. In 1996, pursuant to the Telecommunications Act of 1996, 47 U.S.C. et seq., the Kentucky Public Service Commission approved BellSouth's entry into the Fayette County market. In order to serve and compete in the Fayette County market, BellSouth needed to install certain underground telecommunications facilities. BellSouth requested the needed construction permit from the County to begin construction of the first of several underground facilities. The County granted the permit and allowed the placement of this first underground facility. When BellSouth sought permits to install similar facilities in two other locations, however, the County refused to issue the permits, informing BellSouth that it must obtain a franchise from the County before the permits could issue. BellSouth responded by claiming that it already held the required franchise by virtue of its succession to the rights of the Ohio Valley Telephone Company, which included a "perpetual statewide franchise" granted by the Kentucky General Assembly in 1886. BellSouth then moved for the preliminary injunction that is the subject of this appeal.

## II.

This court reviews for abuse of discretion a district court's decision on a preliminary injunction. *Memphis Planned Parenthood, Inc. v. Sundquist,* 175 F.3d 456, 460 (6th Cir.1999). Accordingly, we may overturn an injunction only if the district court relied upon clearly erroneous findings of fact, improperly applied the law, or applied an erroneous legal standard. *Masciio v. Public Employees Retirement System of Ohio, et al.,* 160 F.3d 310 (6th Cir.1998).

In determining whether the grant of a preliminary injunction is appropriate, courts analyze four factors:

(1) Whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable harm if the injunction was not granted; (3) whether issuance of the injunction would cause substantial harm to others; (4) whether the public interest would be served by issuance of the injunction.

*See Rock and Roll Hall of Fame and Museum, Inc. v. Gentile Prod.,* 134 F.3d 749, 753 (6th Cir.1998).

This court has set a particularly high bar in the review of preliminary injunctions, reversing the "district court's weighing and balancing of the equities only in the rarest of circumstances." *Moltan Company v. Eagle–Picher Indus., Inc.* 55 F.3d 1171, 1175 (6th Cir.1995).

Here, the County urges us to overturn the district court's injunction on the grounds that (1) the hearing on the preliminary injunction was inadequate, (2) the weighing of the equities did not support the trial court's decision to issue the injunction, and (3) the preliminary injunction order failed to make the requisite findings of fact and conclusions of law. Reviewing these claims, we find no abuse of discretion on the part of the district court, and affirm its grant of the preliminary injunction.

■ The County alleges that the preliminary injunction hearing was inadequate because the district court did not permit oral testimony from the County. However, Federal Rule of Civil Procedure 65, which governs the issuance of preliminary injunctions, does not require the presentation of oral testimony. This is particularly true when the issues litigated are primarily questions of law. *Securities and Exchange Comm'n v. G. Weeks Sec., Inc., et al.,* 678 F.2d 649 (6th Cir.1982). In this case, both parties agreed that the facts were undisputed and that Judge Wilhoit could resolve the question of the preliminary injunction as a matter of law.

The County also refers to "procedural inadequacies," but provides no evidence of what these inadequacies were. For example, the County implies that the notice given of the preliminary injunction hearing was somehow insufficient, but does not indicate in what way that notice was insufficient. The County also claims that the deficiencies of the hearing may entitle it to have its claims reviewed de novo by this court. If the County could point to a procedural defect, de novo review might be

appropriate. However, it cannot. Accordingly, any claim to a heightened standard of review is without merit.

■ The County also alleges that the district court abused its discretion in weighing the four factors germane to issuance of a preliminary injunction. First, the County claims that BellSouth is not likely to succeed on the merits because the 1886 act of the Kentucky Legislature granting the perpetual franchise became law over 100 years ago. The county describes *City of Louisville v. Cumberland Tel. & Tel. Co.,* 224 U.S. 649, 32 S.Ct. 572, 56 L.Ed. 934 (1912), the case cited in support of the 1886 act, as a "pre-*Erie,* Lochner-era decision." However, venerable or not, *City of Louisville,* which affirms the Kentucky Legislature's grant of a franchise, is still good law. The Appellant's characterization of the case as irrelevant because of *Erie* and *Lochner* says a great deal about the strengths of their claim. *Erie* has nothing to do with this case as there is no dispute over the applicable law. Likewise, neither the case cited, nor the case before the court bears the slightest resemblance to *Lochner.*

■ The second factor in preliminary injunction analysis, typically regarded as the most important, is whether BellSouth will suffer irreparable injury unless the injunction is issued. BellSouth argues that it would suffer irreparable injury in the form of lost customers. If BellSouth's entry into the market were delayed, it would lose some customers to other service providers, as well as the good will of other customers. Although one could argue that these losses are essentially monetary (*i.e.* lost revenues), and therefore not irreparable, Judge Wilhoit found otherwise. This circuit's holding in *Basicomputer Corp. v. Scott,* 973 F.2d 507, 511–512 (6th Cir.1992), in which we held that loss of "customer good will and loss of fair competition (competitive losses) amounts to ir-

reparable injury because the damages flowing from such losses are difficult to compute ... and likely to irreparably harm an employer," supports his finding. *Id.*, at 512. We find no abuse of discretion in the district court's characterization of loss of customers and delayed entry in to the market as irreparable harm.

The third factor in the court's analysis is whether issuance of the injunction will cause substantial harm to others. The district court found that any potential harm to others was outweighed by the potential irreparable injury to BellSouth. In this case, the only party likely to suffer any harm because of the issuance of the injunction is the County, which would be temporarily deprived of the franchise fees it sought to collect from BellSouth. Should the County prevail at trial, these franchise fees could easily be imposed retroactively, with interest, and there is no reason to believe that BellSouth lacks the means to satisfy the judgment.

Lastly, we examine whether the public interest would be served by the issuance of the injunction. Far from harming the community at large, it appears likely that increased competition and increased capacity in phone service would provide a public benefit by providing additional service and keeping rates low. The only potential harm to the public interest is the potential loss of revenue to the public fisc. However, as noted above, should the County prevail on its claim on the merits, this temporary harm is easily remedied.

Accordingly, we find that the district court did not abuse its discretion in weighing the equities to grant the preliminary injunction.

The County also claims that the order granting the injunction is deficient for lack of adequate findings of fact and conclusions of law. This claim is without merit. As with the County's first claim, the appellants are simply unable or unwilling to point to any particular deficiency. Our review of the order indicates that the court applied the proper test to the facts stipulated by the parties and drew appropriate legal conclusions. While the County may be uncomfortable with the result of the hearing, it was a result squarely within the court's sound discretion.

### III.

For the foregoing reasons, the order of the district court is AFFIRMED.